UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MARCELLA J. SANDERSON,

                Petitioner,

      v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

                Respondent.

Case No. 1:16-cv-00242-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Currently pending before the Court is Marcella Sanderson's Petition for Review of

the Respondent's denial of social security benefits, filed on June 17, 2016. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will remand the decision

of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on September 18, 2012. This application was denied initially and on reconsideration, and a hearing was held on February 19, 2014, before Administrative Law Judge (ALJ) MaryAnn Lunderman. After hearing testimony from Petitioner and a vocational expert, ALJ Lunderman issued a decision on May 27, 2014, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on April 13, 2016.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of January 3, 2012, Petitioner was forty-five years of age. Petitioner has a high school education, and her prior work experience includes work as a personnel clerk, a bookkeeper, and a coffee house worker.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of January 3, 2012. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's discogenic and degenerative disorder of the back, mild degenerative changes of the right shoulder, fibromyalgia, and

obesity severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Petitioner's fibromyalgia and obesity under Section 1.04 (disorders of the spine). The ALJ determined none of Petitioner's impairments met or equaled the criteria for the listed impairment considered.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible.

Here, the ALJ found Petitioner's complaints not entirely credible. Based upon the adverse credibility finding, the ALJ next rejected the opinions of Petitioner's treating physician, Dr. Hicks, and the third party statements of Petitioner's husband, a co-worker, and a neighbor, on the grounds that these witnesses simply "parroted the subjective complaints already testified to and reported by the claimant." (AR 27.) After so doing, the ALJ determined Petitioner retained the RFC to perform light work, including her past work as a personnel clerk, bookkeeper, and coffee house worker, with limitations on climbing, overhead reaching with her right upper extremity, and no direct exposure to vibrations.

If a claimant demonstrates an inability to perform past relevant work, the burden

shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found also that Petitioner retained the ability to perform the requirements of representative occupations such as office helper, mail clerk, and counter clerk, all classified as light work. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where

the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred at step four. Specifically, Petitioner argues the ALJ erred in rejecting Petitioner's subjective complaints, failed to provide germane reasons for rejecting lay witnesses' statements, and erred in rejecting the opinion of treating physician Laurence V. Hicks, D.O. The Court will discuss each assignment of error in turn.

**1.      Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).

When assessing the credibility of a claimant's testimony regarding subjective pain

or the intensity of symptoms, the ALJ engages in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. If the claimant has presented such evidence, and there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" to reject the claimant's testimony about the severity of the symptoms. *Id*. At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

When evaluating the claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, *id.*; "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work

setting, *see Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ found Petitioner's impairments could reasonably be expected to cause some of her alleged symptoms, but that her statements about the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (AR 16.) The ALJ provided two reasons for discrediting Petitioner: (1) lack of support by objective medical evidence; and (2) inconsistency of Petitioner's allegations with her activities of daily living. The Court will discuss each reason in turn.

A.      *Objective Medical Evidence*

The Court finds the explanation given in *Anderson v. Apfel*, 100 F.Supp.2d 1278 (D. Kan. 2000), helpful for understanding fibromyalgia, against which this Court viewed the objective medical evidence of record.

"Fibromyalgia is defined as a syndrome of pain in the fibrous tissues, muscles, tendons, ligaments, etc." *Duncan v. Apfel*, 156 F.3d 1243, 1998 WL 544353, at *2 (10th Cir. Aug. 26, 1998) (Table) (citing *The Merck Manual of Diagnosis & Therapy*, at 1369 (Robert Berkow & Andrew J. Fletcher eds., 16th ed.1992)). "The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." *Ward v. Apfel*, 65 F.Supp.2d 1208, 1213 (D. Kan. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). "Because fibromyalgia, ..., is diagnosed by ruling out other diseases through medical testing, ..., negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that claimant does not suffer from a potentially disabling condition." *Lantow v. Chater*, 98 F.3d 1349, 1996 WL 576012, at *1 (10th Cir. Oct.8, 1996) (Table). "Courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling." *Ward v. Apfel*, 65 F.Supp.2d at 1213 (citing *Sarchet v. Chater*, 78 F.3d at 309; *Cline v. Sullivan*, 939 F.2d 560 (8th Cir. 1991); *Biri v. Apfel*, 4 F.Supp.2d 1276 (D. Kan. 1998)).

*Anderson*, 100 F.Supp.2d at 1286.

Here, the ALJ discussed Petitioner's ability to move extremities upon examination, conservative treatment modalities such as electro-acupuncture and massage, and the lack of diagnostic imaging results as support for her conclusion Petitioner's complaints were not credible. For instance, the ALJ cited the negative EMG and NCV testing; lack of objective findings upon MRI; and a lack of evidence that Petitioner's use of crutches and leg braces was medically necessary. (AR 26 – 27.) However, the lack of objective findings is precisely what characterizes fibromyalgia, and cannot be used as a basis to reject Petitioner's subjective complaints. The ALJ erred by "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (quoting *Green–Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing and remanding for an award of benefits where the

claimant was disabled by fibromyalgia)).

Further, the record is replete with consistent findings supporting Petitioner's diagnosis of fibromyalgia and her chronic pain. Dr. Hicks was Petitioner's primary provider since January of 2009, up through May of 2014. (AR 377 – 614; 684.) Records from Dr. Hicks indicate Petitioner sought care in intervals of 1 to 2 weeks, consistently complaining of bilateral lower extremity pain, neck pain, and left upper extremity pain. Dr. Hicks utilized several treatment modalities, including a TENS unit, electro-acupuncture, drug therapy, injections, and others. Additionally, Dr. Hicks referred Petitioner to several specialists, discussed below.

Petitioner complained of chronic pain "in multiple sites," together with weakness, in May of 2009, to Dr. Clinton Dille, and her complaints of pain were consistent throughout June and July of 2009. (AR 317 - 322.) She was seen in August of 2009, by Dr. James Herrold, a neurologist, complaining of bilateral leg pain, left arm pain, and weakness. (AR 323 – 324.) Although Dr. Herrold was of the opinion Petitioner's presentation was peculiar for fibromyalgia, he believed Petitioner suffered from "idiopathic three extremity chronic pain syndrome," and recommended follow up with a pain specialist. (AR 324.) Petitioner was next referred to Dr. Reddy, a rheumatologist, on August 28, 2009, who diagnosed chronic bilateral lower leg pain. (AR 326.) Dr. Reddy noted on September 9, 2009, Petitioner experienced painful range of motion in her left shoulder, tenderness over the subacromial area, and tenderness present over the anterior aspect of the tibia in both lower extremities. (AR 338-39.)

Petitioner was referred to Dr. Kenneth Brait, a neurologist, on November 3, 2010. (AR 527 – 28.) At that visit, Dr. Brait noted Petitioner complained of pain that had become progressively worse, in her left shoulder and arm, and in both lower extremities. Dr. Brait noted "some hyperesthesia over the medial aspect of the leg," which was uncommon, and left arm weakness. (AR 528.) Petitioner again saw Dr. Brait on November 30, 2011, after a thirteen-month absence, continuing to complain of chronic pain, pain while walking, and pain in her right shoulder. (AR 355.) Dr. Brait recommended continued treatment for her pain syndrome, and follow up with Dr. Hicks. (AR 356 -58.)

Notably, in office records from October 20, 2010, Dr. Hicks documented a tender left shoulder and bilateral lower extremity tenderness from knees down in a non-radicular pattern, and 11/18 tender points. (AR 480.) Although Dr. Hicks frequently noted good mobility upon examination, mobility is not inconsistent with pain. (AR 26, 28.) One can be mobile, but still experience pain. The ALJ's reliance upon "good mobility" as one of the only factors to discredit Petitioner constitutes error in light of Petitioner's consistent reports of pain over a greater than 5-year period to various medical providers.

By focusing solely upon the objective medical evidence, the ALJ failed to discuss other evidence, which included Petitioner's constant complaints of pain and other symptoms recorded by Dr. Hicks and others. The failure to do so constitutes error. *Laborin v. Berryhill*, Slip Op. No. 15-15776 (9th Cir. Aug. 16, 2017) (RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other

evidence, including the individual's complaints of pain and other symptoms…."). "In other words, the ALJ must take 'the claimant's subjective experiences of pain' into account." *Id.*

### B.     *Activities of Daily Living*

The second reason the ALJ provided for discrediting Petitioner was her "extensive activities," such as sitting in church for up to three hours; shopping for two hour periods; volunteer painting; vacationing in Challis; canning; fishing; picking apples; mopping; having yard sales; and mowing the lawn. (AR 26.) The ALJ found these activities inconsistent with Petitioner's reports of disabling pain, citing Exhibits 21F/1-15; 20F; 19F; and 13F/6. Upon review of the records cited, the ALJ selectively picked from the entire record, and failed to discuss the aftermath of those activities, which Petitioner reported caused increased pain, fatigue, and disabling symptoms.

Exhibit 21F encompassed the period from March 26, through October 3, 2013. During this period, Petitioner did travel to Challis, and she canned, picked apples, mopped, went shopping, had a yard sale, and mowed the lawn. But, the ALJ left out important parts of the record and failed to discuss Petitioner's reports of increased pain and fatigue after each activity. For instance, on March 26, 2013, Petitioner reported feeling unenergetic, and after having mopped the bathroom, she was "hurting. I have widespread pain = 7-8/10. I am having trouble with …XS drowsiness DT fatigue. I am unable to do my ADL's." (AR 680.) Dr. Hicks noted Petitioner moved slowly and had tenderness in her trunk and extremities. She was instructed to rest. On April 2, 2013,

Petitioner reported her pain was less than on March 26, 2013, but she still felt "drained for energy." (AR 679.) On April 16, 2013, Petitioner reported sleeping 10-12 hours per day. (AR 678.) Dr. Hicks' review of lab test results indicated the "fatigue likely due to FMS…After shopping for 2 hours on Saturday I was tired and then in pain next day." On April 22, 2013, Petitioner reported pain "6/10….when I over do it, as I did this week, then I hurt a lot." (AR 677.)

Petitioner reported on May 7, 2013, having gone to Challis "to get away and rest." (AR 675.) Dr. Hicks noted back and bilateral lower extremity tenderness, and "chronic pain and fatigue, FMS." On May 13, 2013, Petitioner reported pain "7/10" after having mowed "part of the lawn. I have been doing all of my ADL's and it has been making me really hurt. I had a yard sale on Sunday." (AR 674.) Dr. Hicks assessed widespread chronic pain, and treated Petitioner with electro-acupuncture. On May 29, 2013, Petitioner indicated her activity had decreased due to pain, "6/10. I have had trouble with ADL's this week…." (AR 673.) Dr. Hicks administered an intramuscular injection of Toradol, 60 mg.

On July 19, 2013, Petitioner complained of pain "everywhere. Monday I couldn't even get out of bed due to pain." (AR 672.) Dr. Hicks noted "back taut and tender and both shoulders are tender…Acute aggravation of Chronic Pain." Dr. Hicks administered an intramuscular injection of Toradol 60 mg, and Phenergan 50 mg. On July 23, 2013, Petitioner again reported pain 8/10, and Dr. Hicks noted "widespread areas of tenderness above and below the waist, front and back. Multiple tender point in XS of 11/18

characteristic of FMS." (AR 669.) The same complaints and notations were contained in the previous progress note from July 11, 2013. (AR 670.) On July 30, 2013, Petitioner reported pain "everywhere…8/10." (AR 668.) Dr. Hicks noted bilateral upper extremity and lower extremity tenderness, and "acute exacerbation of chronic widespread pain." Dr. Hicks administered an injection of Toradol 60 mg. subcutaneously.

On August 26, 2013, Petitioner reported having gone fishing and apple picking, but then reported: "I am hurting all over. I couldn't hardly move my arms after picking apples. Pain = 8/10." (AR 667.) Dr. Hicks noted "neck and shoulders are tender….Acute exacerbation Chronic Pain." Dr. Hicks prescribed a Prednisone 5 mg burst pack to treat her pain. On September 5, 2013, Petitioner reported she had been fishing a few days prior, but was experiencing a "burning sensation." Dr. Hicks assessed chronic pain at that office visit. (AR 666.) And finally, on October 3, 2013, Petitioner reported to Dr. Hicks she had been busy canning, but office notes indicated "Pain = 8/10, I have been canning and I am in sad shape. I have felt really tired and weak last few days. Yesterday I had to sleep most all day." (AR 665.) Dr. Hicks assessed "widespread arthralgias and myalgias."

Exhibit 20F encompasses two office visits on January 7, 2013, and January 15, 2013. (AR 661 – 663.) At those two visits, Petitioner reported pain "=4/10." Dr. Hicks noted on January 15, 2013: "because of the ill effects of Sally's health disorders, she continues to be unable to be gainfully [employed]." On January 7, 2013, Petitioner had reported both legs were swollen and painful, "Pain =8/10," "drowsiness," "arms and hands have [been] more numb lately." Dr. Hicks noted left shoulder blade and bilateral

lower extremity tenderness.

Exhibit 19F encompasses the period from October 2, 2012, to December 18, 2012. (AR 649 - 660.) Again, Petitioner consistently reported increased pain and fatigue to Dr. Hicks during this period any time she increased her activity level. For instance, on October 2, 2012, Petitioner reported increased pain the prior Sunday because she had to "do extra." On October 3, 2012, she visited Dr. Hicks because she fell. Dr. Hicks noted "acute exacerbation of Right upper extremity and both legs knee to ankle pain." On October 9, 2012, Petitioner reported both arms hurt, and her right leg was spasming. Dr. Hicks administered a Toradol injection for pain. On October 16, 2012, Petitioner reported sleeping the day prior until 2:00 p.m., with pain 6/10, and that she "overdid it crocheting." On October 23, 2012, Petitioner reported having slept until 2 p.m. On November 13, 2012, Petitioner reported increased pain in her left shoulder, and Dr. Hicks noted left shoulder tenderness and trigger points. On November 20, 2012, Petitioner reported pain 8/10 and fatigue. On November 27, 2012, Dr. Hicks noted Petitioner's left shoulder and both lower extremities were tender. On December 4, 2012, Petitioner reported "hurting all over," with pain 6/10, and that she was able to do only her ADL's. Dr. Hicks noted Petitioner's shoulders, upper extremities, and lower extremities were "tender to touch."

And lastly, Exhibit 13F/6 documents Petitioner's three-hour visit to church. (AR 379.) On September 25, 2012, Petitioner reported "difficulty with graduated compression stocking and sitting in church for 3 hours affected the right lower extremity and it was

swollen." Petitioner reported bilateral upper and lower extremity pain, "6/10. Impaired ADL's. XS sleepiness." Dr. Hicks noted bilateral shoulder and knee pain upon examination.

The ALJ cites also the lack of a prescription for Petitioner's lower extremity brace use as a reason to discredit her testimony. (AR 26.) However, the ALJ failed to note that, on August 25, 2011, Petitioner visited OrthoPro in Twin Falls for evaluation of her feet for extra-depth diabetic footwear, and that progress notes indicated Petitioner currently wore "AZ AFO's bilaterally as needed."[1] Petitioner was referred to OrthoPro by Dr. Hicks, according to the progress note. (AR 715.) The progress note from August 27, 2010, also indicates referral to OrthoPro by Dr. Hicks for a "left upper extremity brace." (AR 713.) A progress note from July 28, 2011, indicates Petitioner sought a replacement pair of AZ AFO's, which she had used "historically…with free motion hinges and tall laced configuration with extra-depth shoes secondary to her ankle instability." (AR 714.) The ALJ failed to discuss these progress notes in her analysis, which contradict her conclusion that the devices were not medically necessary and thereby undermined Petitioner's credibility.

Based upon the record as a whole, the Court finds the ALJ's credibility assessment to be in error. The ALJ failed to discuss Petitioner's credible symptom testimony and

---

[1] A search utilizing the Google search engine for "AZ AFO" revealed the following website, www.arizonaafo.com, and the tab for "products" showcased the types of Arizona leg and ankle braces manufactured by the company. The Court has attached as an exhibit the webpage for AZ AFO products.

corresponding findings of trigger points and pain upon examination in the medical records, and instead selectively chose portions of the record to substantiate her adverse credibility determination.

## 2. Lay witness testimony

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v.Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

In rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the

claimant, a reviewing court cannot consider the error harmless unless it can confidently

conclude that no reasonable ALJ, when fully crediting the testimony, could have reached

a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050,

1056 (9th Cir. 2006).

      Here, the ALJ considered the third party statements of Petitioner's neighbors,

husband, and a former co-worker. The ALJ rejected Petitioner's husband's statement

because he "parroted [Petitioner's] subjective complaints," which the ALJ found not

credible; Petitioner's husband was not a medical professional; and, Petitioner's spouse

had a familial and financial interest in receiving benefits. Because the ALJ's credibility

determination is not supported by substantial evidence in the record, it cannot be used as

a basis to discredit Petitioner's spouse's statements.[2] Second, neither lack of medical

training, an assumed financial interest in a favorable adjudication, nor a familial interest

constitutes a germane reason for rejecting lay testimony. *Gutierrez v. Colvin*, 208

F.Supp.3d 1117, 1124-25 (E.D. Cal. Sept. 26, 2016) (finding regulations specifically

require consideration of "non-medical" sources, and rejecting supposed financial interest

in a favorable adjudication and family bias as germane reasons for discrediting lay

testimony).

      The ALJ rejected also the third party statements of claimant's neighbors and co-

---

[2] The ALJ may rely upon her credibility assessment to discredit lay witness testimony, provided the credibility assessment is free from legal error. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (finding ALJ did not commit error, because the ALJ validly rejected all the limitations described by the lay witnesses in discussing the petitioner's testimony).

worker, again because they relied upon subjective complaints reported by Petitioner that the ALJ found not credible. Because the ALJ erred with respect to her credibility determination of Petitioner, the ALJ may not rely upon the same for discrediting these statements. Additionally, each of the lay witnesses discussed their observations and interactions with Petitioner, not merely her subjective complaints to each of them.

The ALJ cited that the neighbors and coworkers had "limited, and mostly remote, interaction" with Petitioner. The Court finds no support in the record for this conclusion. Bryce Barfuss, a "good friend and neighbor," has known Petitioner for six years, and considers her "family." He recounted in detail his observations of Petitioner, and indicated he and his wife visited often to help her with activities. (AR 309.) Cheryl Nevin, another neighbor and friend, has known Petitioner for two years, lived next door to her, saw her a "couple times a week," and observed her "having difficulties walking, standing, and use[ing] her arms." (AR 308.) Nevin often picked up prescriptions for Petitioner, helped her with activities, and observed her crying "because of the frustration she had from the pain." And Karla Birkby, Petitioner's former co-worker, has known Petitioner since 2002, and had "daily contact" with her once Petitioner became the store secretary. (AR 307.) Daily, and even weekly contact between co-workers and neighbors who often visited Petitioner's home to assist her, hardly constitutes remote or limited interaction. These third party statements indicate frequent, intimate interaction with Petitioner – the opposite of limited and remote.

And finally, the ALJ rejected the third party statements because they were

"colored by affection because of the personal relationships with the claimant." (AR 27.) For the same reason the AJL cannot discredit lay testimony based upon a familial relationship, a personal friendship does not constitute a germane reason to discredit lay testimony.

The Court finds none of the reasons given by the ALJ constitute proper grounds for rejecting the lay witness testimony.

**3.       Physician Opinions**

Petitioner contends the ALJ erroneously rejected the opinion of Petitioner's treating physician, Dr. Hicks, because the ALJ did not properly weigh the opinion against those of the state agency physicians, and erroneously concluded Dr. Hick's opinions were not supported by or consistent with other medical evidence.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Also, "clear and convincing" reasons are required to reject the

treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

1988). Even if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing "specific and legitimate

reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*,

722 F.2d 499, 502 (9th Cir. 1983).

An ALJ is not required to accept an opinion of a treating physician if it is

conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's

opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes

v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the

physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec.

Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the

physician's opinion include clinical findings from examinations, conflicting medical

opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;

*Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871

(9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An

ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a

claimant's self -reports that have been property discounted as not credible. *Tommasetti v.

Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Hicks signed a functional assessment which was not dated, but was faxed to

Petitioner's counsel on February 13, 2014. (AR 681-82.) The ALJ rejected the opinions

because the form contained first party statements, and therefore "appeared to have been completed by Petitioner." However, Dr. Hicks signed the form and therefore endorsed the statements made therein. Further, Dr. Hicks indicated, based upon his longstanding treatment history, Petitioner's condition would cause her to miss attendance at work. The second reason given for rejecting Dr. Hicks' statement was its reliance upon Petitioner's subjective complaints, which the ALJ previously discredited. The Court finds these are not specific or legitimate reasons for discrediting Dr. Hicks' opinion, as discussed above.

## CONCLUSION

As explained above, the Court finds the ALJ's credibility assessment is not supported by substantial evidence in the record; the ALJ failed to articulate specific, germane reasons for rejecting the opinion of the lay witnesses; and the ALJ improperly relied upon a flawed credibility assessment as grounds for rejecting a treating source opinion.

Although Petitioner requests the decision be reversed and benefits awarded, the Court finds remand is appropriate here. The state agency physicians came to different conclusions regarding Petitioner's abilities than did Dr. Hicks, and there may be other portions of the record which are inconsistent with Petitioner's testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the claimant's testimony as true."). While it is a close call, the Court finds it appropriate here to remand

to the agency for further proceedings consistent with this decision.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 8, 2017

Honorable Candy W. Dale
United States Magistrate Judge